<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALBA I. GOMEZ ESTEVEZ<br><br>        Plaintiff,<br> v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Civil Action No. 16-1916 (SDW)<br><br>**OPINION**<br><br>December 8, 2016 |

**WIGENTON,** District Judge.

Before the Court is Plaintiff Alba I. Gomez Estevez's ("Plaintiff" or "Estevez") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") that Plaintiff is not disabled under section 1614(a)(3)(A) of the Social Security Act (the "Act"). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons set forth below, this Court **AFFIRMS** the Commissioner's decision.

**I. PROCEDURAL AND FACTUAL HISTORY**

 **A. Procedural History**

On July 6, 2012 and July 23, 2012, Plaintiff applied for Disability Insurance Benefits ("DIB") (R. 214-22) and for Supplemental Security Income Benefits ("SSIB") (R. 223-30), respectively, alleging disability as of May 2011 due to depression, neck pain, lower back pain, and

pain and swelling of the right knee.  (R. 46, 85, 96, 106, 117, 214-30.)  Plaintiff's applications for DIB and SSIB were denied both initially and upon reconsideration.  (R. 131-36, 138-46.) Plaintiff's subsequent request for a hearing before an administrative law judge ("ALJ") was granted, and a hearing was held before ALJ Elias Feuer ("ALJ Feuer") on April 21, 2014.  (R. 43-83.)  Plaintiff appeared and testified at the hearing.  (R. 47-78.)  On August 13, 2014, ALJ Feuer issued a decision finding Plaintiff was not disabled and denying her application for disability benefits.  (R. 19-42.)  On February 12, 2016, the Appeals Council denied Plaintiff's request for review of ALJ Feuer's August 13, 2014 decision, making it the Commissioner's final decision. (R. 1-7.)  Plaintiff seeks reversal of ALJ Feuer's decision and asks this Court to grant her request for SSIB and DIB, or in the alternative, to vacate the final decision and remand the case for a further hearing.  (Pl.'s Br. 36-37.)

### B. Factual History

#### *1. Personal and Employment History*

Plaintiff was born on August 17, 1969 and was 44 at the time of ALJ Feuer's decision.  (R. 214.)  Plaintiff has a 26-year-old daughter and a 9-year-old son.  (R. 73.)  She completed the ninth grade in the Dominican Republic in 1984 and had previously worked as a cashier in 1999 and a home health aide from 2002 to 2011.  (R. 50, 52-53, 245.)   Plaintiff avers she lost this job as a home health aide due to injuries from a motor vehicle accident and has not been able to return to work.  (R. 500.)

#### *2. Medical History*

##### 1. Physical Impairments

On May 16, 2011, Plaintiff was admitted to Clara Maas Medical Center Emergency Room via ambulance after she was involved in a motor vehicle accident.  (R. 348.)  She reported pain in

her lower back, right knee, and left leg.  (R. 348.)  After the x-ray of the right knee came back normal, the receiving doctor diagnosed Plaintiff with knee pain and back strain.  (R. 348, 352.)  The doctor noted that Plaintiff did not have a condition that required further testing and released her the same day with medication.  (R. 348, 350.)

Shortly thereafter, Plaintiff became a patient of the Newark Rehabilitation Center under the care of Jose Colon, M.D., D.A.A.P.M. ("Dr. Colon") due to continuing pain and stiffness in her lower back and right knee.  (R. 382.)  Upon evaluation, Dr. Colon noted that Plaintiff had swelling and tenderness of the right knee, as well as paraspinal muscle spasms and tenderness.  (R. 371-74.)  Dr. Colon ordered a number of diagnostic tests, including a magnetic resonance imaging ("MRI") scan and an electromyography ("EMG") of the lumbar spine, as well as an MRI of the right knee to determine the cause of her pain.  (R. 374.)  The MRI and EMG of the lumbar spine revealed an L5-S1 disc herniation with lumbar radiculopathy.  (R. 368, 377, 387, 392-393.)  The MRI of the right knee revealed a tear in the medial meniscus, as well as small knee effusion.  (R. 394.)

Plaintiff was then placed on a program of progressive physical therapy with Richard Ruiz, P.T. ("Dr. Ruiz").  (R. 368.)  From May 2011 to September 2011, Plaintiff went to physical therapy approximately three times per week, where she received massage therapy, electrical muscle stimulation, and performed therapeutic exercises.  (R. 420-22.)  From June 2011 through August 2011, Dr. Ruiz's progress notes indicated that Plaintiff was making slow but steady improvement with progressive therapy.  (R. 405-414.)

During the course of physical therapy, Plaintiff was also seen periodically by Dr. Colon. Physical examinations indicated that Plaintiff continued to show paraspinal tenderness, a herniated disc, as well as a tear of the meniscus.  (R. 370-73.)  Due to the nature of Plaintiff's lower back

pain, Dr. Colon gave Plaintiff epidural steroid injections on three occasions. (R. 395-403.) His progress notes further showed that Plaintiff had no atrophy, loss of bulk, tone or strength in her lumbar muscles, but she experienced a decreased pinprick sensation in her lower back at the L5 disc. (R. 376.) Dr. Colon also reported tenderness and decreased range of motion in Plaintiff's right knee, and pain upon extension of both knees. Dr. Colon observed that Plaintiff had developed an antalgic gait and used a cane.

Throughout treatment, Dr. Colon submitted a number of forms stating that Plaintiff could not work beginning May 20, 2011 due to her back pain and a tear in her medial meniscus. (R. 415-417.) He initially estimated that her recovery date would be June 2011, though he later opined the estimated recovery date would be October 2011. (*Id*.) In a letter submitted to Plaintiff's attorney dated October 3, 2011, Dr. Colon's diagnoses included: a sprain in the upper and lower back, a lower back disc herniation at L5-S1, lumbar radiculopathy, a bruised right knee, and a tear in the medial meniscus. (R. 369.) He further opined that these injuries were permanent in nature and Plaintiff would not be able to return to work. (*Id*.) He also concluded that she needed arthroscopic surgery of the right knee, but it had not been performed due to her limited amount of insurance. (R. 369.)

On February 17, 2012, Steven Robbins, M.D., F.A.C.S. ("Dr. Robbins") performed an independent orthopedic evaluation on Plaintiff in relation to her auto accident claim. (R. 500.) Plaintiff complained that since her accident, she had been suffering from neck pain that radiated up into her head and right shoulder, lower back pain that occasionally radiated down both legs, and pain in her right knee. (R. 500-01.) During the evaluation, Dr. Robbins noted that Plaintiff was tender to the touch, but the tenderness was out of proportion to the light touch used and it was not localized to any joint or muscle. (R. 502.) He stated that Plaintiff complained of back pain

during tests that were used to assess the lower extremities and thus should not have caused any back discomfort. (*Id*.)  Dr. Robbins also noted that she showed restricted motion in her lumbar spine upon examination, but concluded it was self-restricted motion because she easily got on and off the examining room table showing a greater range of motion. (R. 501.)  Lastly, Dr. Robbins observed that Plaintiff came in with a cane, but was able to walk without it. (*Id*.)  Based on this examination, Dr. Robbins concluded that Plaintiff sustained multiple temporary soft tissue injuries as a result of her motor vehicle accident and none of her injuries were permanent. (R. 503.)  He further noted that many of the diagnoses listed in Dr. Colon's October 3, 2011 letter were not clinically correlated. (R. 502.)

On October 25, 2012, Justin Fernando, M.D. ("Dr. Fernando") performed a physical examination on Plaintiff. (R. 432-36.)  He reported that her gait was normal, grip strength was normal, cervical spine, hips, and knees revealed full range of motion, there was tenderness in her right knee, and a possible abnormality with the discs in her lower back, specifically at the L5-S1 level. (R. 433-34.)  Further, he noted that she walked in with a cane, but became totally unaware of the cane during the exercises and did not use it. (R. 433.)  His final diagnoses included chronic pain in the cervical spine, a possible small tear in her meniscus, and lower back pain due to a possible abnormality at the L5-S1 level. (R. 434.)

Plaintiff was treated by rheumatologist, Carl Restivo, M.D., ("Dr. Restivo") from February 2013 to February 2014, after an x-ray indicated she may have arthritis.  Dr. Restivo's progress notes consistently indicated that Plaintiff had osteoarthritis in her hands with no evidence of contractures. (R. 512-20.)  He occasionally administered Depo-Medrol injections in her shoulders and knees to reduce her arthritis pain, which she reported worked very well. (R. 516-21, 523.)  He further stated that she had a normal gait and station, a normal range of motion in her neck, normal

5

neurologic exams, no scoliosis, and no atrophy, flaccidity, or spasms in the muscles. (R. 509, 512-532.)

Starting in April of 2013, Dr. Restivo noted that trigger points in Plaintiff's upper back and spine were tender, she had limited shoulder motion, sciatica in her knees, bursitis in her hip and shoulder, and possible fibromyalgia. (R. 507, 512.) He further noted that Plaintiff consistently complained of pain which became worse with exertion, but was relieved by rest. (R. 522.) In an August 2013 evaluation, Dr. Restivo noted that Plaintiff's left shoulder lacked full elevation, she experienced limited motion in her cervical spine, and extreme pain in both of her knees. (R. 521.) In January 2014, Dr. Restivo reviewed Plaintiff's x-ray reports and he concluded that Plaintiff's lumbar spine showed disc space narrowing at the L5-S1 level. (R. 525.)

### 2. Mental Impairments

Plaintiff stated that she became depressed after her the car accident, but has never been treated by a mental health professional. (R. 54.) She was prescribed anti-depressants by her primary care physician, Dr. Kelly, and takes them every day to "control [her] moods." (R. 55-56.)

In relation to her disability claim, Plaintiff was referred to Paul F. Fulford, Ph.D. ("Dr. Fulford") for a mental status examination on November 27, 2012. (R. 437-39.) Dr. Fulford noted her mental control was poor, she spoke at a slow pace, she had poor short term memory, her intelligence appeared to be in the low average range, and her judgment was marginal. (R. 438.) Dr. Fulford diagnosed Plaintiff with depression, low average intellectual functioning by observation, orthopedic impairment by report, and chronic pain. (R. 439.)

### *3.Function Reports*

Plaintiff completed two self-function reports on July 27, 2012 and March 21, 2013. (R. 250-57, 270-77.) Plaintiff reported that on a daily basis she wakes up, prepares simple meals,

watches television, reads, and goes to bed around 9 p.m., but pain often keeps her awake at night. (R. 250-52, 271.) Her family helps her with her personal needs, such as getting dressed, hair care, bathing, and shaving, as well as household chores like cleaning and yard work. (*Id*.) They also assist her with taking care of her young son. (*Id*.) Further, she reported her injuries affect her walking, lifting, bending, standing, stair climbing, and concentration. (R. 255, 275.) She can only walk for ten minutes or two blocks before stopping and uses a cane to get around. (R. 255-56, 275.) Plaintiff opined she is good at following instructions and gets along well with authority figures, however, she does not cope well with stress or changes in routine. (R. 256.) Finally, she reported that she is now afraid of driving, is depressed since her car accident, and has no interest in a social life. (R. 274-76.)

Dr. Kelly, Plaintiff's primary care physician, filled out two General Physical Capacity Evaluation questionnaires in March 2013 and August 2013. (R. 464-67.) In her March 2013 evaluation, Dr. Kelly's diagnoses included degenerative disc disease and joint pain. (R. 464.) She reported that Plaintiff had reduced range of motion and tenderness in her shoulder, elbow, knees and hip. She also experienced muscle spasms and had a herniated disc. (*Id*.) Dr. Kelly opined that emotional factors did not contribute to the severity of Plaintiff's symptoms or functional limitations, but Plaintiff's chronic pain interfered with her attention and concentration. (R. 464-65.) She asserted that Plaintiff could walk two to three city blocks, continuously stand for thirty minutes, and sit for four to six hours at one time. (R. 465.) Dr. Kelly further stated that Plaintiff's prognosis was "possible deterioration." (R. 464.) Dr. Kelly did not give her opinion as to Plaintiff's ability to lift, carry, stand, walk, or sit in an eight-hour work day. (*Id*.)

In the August 2013 evaluation, Dr. Kelly noted Plaintiff had lower back and lower joint pain, as well as vertigo. (R. 490-91.) She opined that emotional factors did not contribute to the

7

severity of Plaintiff's functional limitations, but wrote in the same questionnaire that depression affected Plaintiff's physical condition. (R. 491.) Further, she opined that Plaintiff could only walk one block, sit for two hours at a time, and stand for thirty minutes at a time. (*Id*.) In an eight-hour workday, Plaintiff would have to get up and walk every ten minutes for ten minutes each time and would also need a job that permitted shifting positions at will from sitting to standing. (R. 492.)

Finally, in a letter dated April 4, 2014, Dr. Kelly observed that Plaintiff suffered from multiple herniated discs accompanied by episodes of vertigo, which affects her ability to perform activities of daily living. (R. 533.) She further remarked that Plaintiff's medical condition had significantly deteriorated despite medical treatment. (*Id*.)

### *4. Hearing Testimony*

At a hearing conducted by ALJ Feuer on April 21, 2014, Plaintiff testified about her education, previous employment, medical ailments and treatments, and daily activities. (R. 48-54.) Plaintiff asserted that "wherever there's a joint, it hurts." (R. 58.) More specifically, she stated that the strongest pain was in her lower back and the pain was sometimes so extreme it traveled down her right leg and to her toes, making her feel paralyzed. (R. 58, 60-61.) She also experienced pain in her shoulder, left leg, and both knees. (*Id*.) She stated that all of these injuries were caused by the accident. (*Id*.) About a year after the accident in 2012, Plaintiff testified that she began having trouble with her hands due to swelling and pain. (R. 64.) For instance, she could not open containers, could lift very little, and had difficulty making a grip. (*Id*.) Around this time, she also started experiencing vertigo, which occurred five times per week and could last all day. (R. 57, 77.)

Plaintiff then continued to describe her daily activities and functional capabilities. She stated that since the accident, on days she "[wasn't] feeling too bad" she prepared a light breakfast

8

or a snack for herself and her son, then sometimes watched television; however, on days that the pain was too great, she would not get out of bed. (R. 70-71.) Plaintiff testified that her family has helped her with many daily activities. For instance, her sister would pick her son up from school and her husband would make dinner, clean the house, and do the laundry. (R. 73, 75, 77.) Occasionally, her daughter would come by to help around the house. (R. 73.) Plaintiff also asserted that she has difficulty taking care of herself. (R. 64.) For instance, she needs assistance bathing, never leaves the house unaccompanied, and sometimes needs help with fastening buttons. (*Id*.)

Vocational Expert Esperanza DeStefano ("VE DeStefano") also testified at the hearing as to Plaintiff's ability to perform jobs in the national economy. (R. 78-82.) VE DeStefano opined that given a hypothetical person with Plaintiff's limitations,[1] such individual could not perform any past relevant work, but would be able to perform jobs such as an assembler, a cuff folder, or an office helper. (R. 78-80.) When ALJ Feuer posed another hypothetical individual who suffered from more severe limitations,[2] VE DeStefano opined that such an individual could do the jobs of a cuff folder, an addresser, or a document preparer. (R. 79-80.) Further, if that person had additional limitations in grasping and in fine gross manipulation, he or she could still find employment in the national economy. (R. 80.) VE DeStefano opined that being off-task twenty percent of the day or having more than two unexcused absences per month would preclude employment. (R. 81.)

---

[1] Plaintiff's limitations included the following: Plaintiff can lift twenty pounds occasionally, and ten pounds frequently; she can sit for six hours, stand for four hours, and walk for four hours. Plaintiff was never required to climb ladders, ropes or scaffolds, and was only occasionally able to balance, climb ramps and stairs, stoop, kneel, crouch, and crawl. (R. 78-80.)
[2] The hypothetical individual in ALJ Feuer's second example was limited to lifting ten pounds occasionally, five pounds frequently, standing or walking for two hours, and sitting for six hours.

## II.     LEGAL STANDARD

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citation and quotations omitted).

Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla'; it is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where

there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "'where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits.'" *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984) (citations omitted).

### B. The Five–Step Disability Test

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged

. . . ." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 480 (3d. Cir. 2007). If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; SSR 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, the burden shifts to the ALJ at step five to determine whether the claimant is capable

of performing an alternative SGA present in the national economy. 20 C.F.R. §§ 404.1520(g)(1) (citing 404.1560(c)), 416.920(g)(1) (citing 416.960(c)); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). At this point in the analysis, the SSA is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III.  DISCUSSION

On August 13, 2014, after performing the five-step disability test, ALJ Feuer found that from March 16, 2011 though the date of his decision, Plaintiff was not disabled as defined by the Act. (R. 37.) At step one of the disability analysis, ALJ Feuer properly found that Plaintiff had not engaged in SGA since March 16, 2011, the alleged onset date of Plaintiff's disability. (R. 27.)

At step two, ALJ Feuer properly found that Plaintiff suffered from a lumbar spine disorder, a severe impairment as defined by 20 C.F.R. 404.1520(c) and 416.920(c). (*Id*.) ALJ Feuer also correctly determined that there was insufficient objective evidence to establish that Plaintiff suffers from depression. (R. 28.) In making this finding, ALJ Feuer considered the four broad functional areas set out in the disability regulations for evaluating mental disorders in section 12.00C of the Listing Impairments (20 C.F.R., Part 404, Subpart P, Appendix 1). (R. 28.) First, ALJ Feuer correctly found that Plaintiff had only a mild limitation in activities of daily living. (*Id*.) Her treating physician, Dr. Kelly, reported it was her physical conditions, not emotional factors that contributed to her symptoms and functional limitations. (*Id*.) This report was corroborated by the state agency's reviewing psychologist and the overall record. (*Id*.) Second, ALJ Feuer properly found that Plaintiff had a mild limitation in social functioning. (*Id*.) Plaintiff reported that she had

no problems getting along with family, friends, neighbors or others, she had never been fired or laid off due to social issues, and she "[was] good with people." (*Id.*) Third, ALJ Feuer cited the evidence from treating and non-treating physicians to conclude Plaintiff had only a mild limitation in concentration, persistence, or pace. (R. 29.) Fourth, there was no evidence that Plaintiff had experienced any episodes of decompensation. (*Id.*)

Based on the objective medical evidence cited and evaluated, ALJ Feuer correctly determined that Plaintiff's mental impairment was not severe because it caused no more than mild limitations in the first three functional areas and no episodes of decompensation. (*Id.*)

Plaintiff argues that ALJ Feuer erred at Step Two because he did not evaluate all of her impairments, specifically her osteoarthritis. (Pl.'s Br. 32.) At step two of the sequential evaluation process, the Plaintiff bears the burden of proving that her impairments are severe as defined by the regulations. While Plaintiff's progress notes indicated she was diagnosed with osteoarthritis, the record failed to demonstrate that her ability to do basic work activities was limited by the impairment. (R. 435, 513-23.) As precedent dictates, a diagnosis is insufficient to prove disability. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991); *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 (3d Cir. 2007) ("diagnoses alone are insufficient to establish their severity at Step Two.").

Furthermore, whether ALJ Feuer erroneously found an impairment to be non-severe is not legally relevant at this step because he found that at least one impairment was severe and thus moved onto Step Three of the analysis. *Salles*, 229, F. App'x at 145 ("Because the ALJ found in [Plaintiff's] favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless.") (citing *Rutherford*, 399 F.3d at 553). As discussed below, ALJ Feuer accounted for all credible severe and non-severe impairments when determining the Plaintiff's RFC.

15

At step three, ALJ Feuer properly determined that Plaintiff's impairment did not equal or exceed the impairments included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926.) (*Id*.) More specifically, ALJ Feuer properly found that Plaintiff's impairments did not meet or equal the criteria of listing 1.04 because Plaintiff's straight-leg raising tests were inconsistent. (R. 30.) Further, ALJ Feuer properly found Plaintiff's lumbar spine disorder did not result in her inability to ambulate effectively. (R. 30.) As noted by Dr. Fernando and Dr. Robbin's evaluations, Plaintiff came into the examination room with a cane, but became "totally unaware of the cane during exercises…." (*Id*.)

Before undergoing the analysis in step four, ALJ Feuer determined Plaintiff's RFC. (R. 30-35.) ALJ Feuer properly found that since Plaintiff's motor vehicle accident in March 2011, she has the RFC:

> to perform sedentary work…, except she can occasionally lift and carry up to 10 pounds; and frequently up to 5 pounds; stand and/or walk for up to 2 hours per work day; sit for up to 6 hours per work day; never climb ladders, ropes or scaffolds; occasionally climb ramps and stairs; occasionally balance, stoop, kneel, crouch and crawl; but never lift above shoulder level.

(R. 30.) In making this determination, ALJ Feuer considered all of Plaintiff's symptoms to the extent they could be accepted as consistent with the objective medical evidence and all other evidence based on the requirements of 20 C.F.R. 416.929 and SSRs 96-4p and 96-7p. (*Id*.) ALJ Feuer also considered opinion evidence in accordance with the requirements of 20 C.F.R. 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p. (*Id*.) In support of his findings, ALJ Feuer cited Plaintiff's testimony, various doctors' treatment notes, the residual functional capacity assessments, and MRI records.[3] (R. 30-35.)

---

[3] Plaintiff specifically argues that ALJ Feuer's RFC assessment was incomplete because it did not consider evidence of Plaintiff's osteoarthritis, cervical spondylosis, and degenerative disc disease. (Pl.'s Br. 29.) This argument is without merit. ALJ Feuer addressed symptoms of each impairment and gave an explanation as to its credibility. For instance, as to Plaintiff's

ALJ Feuer properly found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (R. 31.) However, ALJ Feuer gave little weight to Plaintiff's statements concerning the intensity, persistence and limiting effect of these symptoms because they were not supported by the medical evidence. (*Id.*) In light of the substantial evidence reviewed by ALJ Feuer, this Court finds that ALJ Feuer properly determined Plaintiff's RFC.

At step four, ALJ Feuer properly found that Plaintiff is unable to perform any past relevant work (20 C.F.R. 404.1465 and 416.965). (R. 35.) The vocational expert testified that Plaintiff's past relevant work requires an exertional capacity that is exceeded by Plaintiff's residual functional capacity. (*Id.*)

Lastly, at step five, ALJ Feuer properly found that Plaintiff is "not disabled" as directed by the Medical Vocational Rules ("Medical Rules") 202.17, 201.24, and, therefore, she is able to perform work that exists in significant numbers in the national economy. (R. 22–23.) ALJ Feuer considered Plaintiff's age, education, work experience, and RFC. (*Id.*) He determined that Plaintiff was capable of satisfying the requirements of the representative occupations of a cuff folder, document preparer, and addresser. (R. 36.) Because Plaintiff is capable of performing work that exists in significant numbers in the national economy, Plaintiff is not disabled, as defined by the Social Security Act. (R. 36-37.)

---

osteoarthritis, ALJ Feuer noted that the "examining physician reported no use abnormalities of [Plaintiff's]… hands; nor reduction in grip strength or motion." (R. 33.) He further noted that "actual exam findings reflect only occasional hand and wrist tenderness, and state there are no contractures or atrophy…." (*Id.*)

## IV. CONCLUSION

Because this Court finds that ALJ Feuer's decision is supported by substantial evidence in the record, the Commissioner's determination is **AFFIRMED.**

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk
cc: Parties